```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
LULA MOTLEY on behalf of          :
KEVIN MOTLEY,                     :
                                  :
                 Plaintiff,       :
                                  : 06 Civ. 15269 (RMB)(THK)
                                  :
        -against-                 :      REPORT AND
                                  :      RECOMMENDATION
MICHAEL J. ASTRUE,                :
COMMISSIONER OF SOCIAL SECURITY,  :
                                  :
                 Defendant.       :
----------------------------------X
```

**FROM:   THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**
**TO:     HON. RICHARD M. BERMAN, UNITED STATES DISTRICT JUDGE.**

Plaintiff Lula Motley ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her request for unpaid retroactive Supplemental Security Income ("SSI") disability payments owed to her son prior to his death. She raises three inter-related issues for the Court to review: (1) whether Kevin Motley was a "child" under the applicable regulations during the period his unpaid disability payments accrued; (2) whether Plaintiff has already been paid the full amount of the unpaid disability benefits to which she is entitled; and (3) whether this Court should, in equity, award Plaintiff the full amount of the balance of unpaid benefits owed to her son. Plaintiff has moved for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

The Commissioner opposes Plaintiff's motion and has cross-

moved for judgment on the pleadings, asserting that Plaintiff has been paid all of her son's past-due SSI benefits to which she is entitled, and asks this Court to affirm the Commissioner's decision.

The action was referred to this Court for a Report and Recommendation in accordance with 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons that follow, the Court recommends that Plaintiff's motion be granted in part, and denied in part, and that the Commissioner's motion be denied. The Court further recommends that the action be remanded solely for calculation and payment of benefits, to be completed within sixty days of the Court's order becoming final.

## BACKGROUND

Kevin Motley ("Kevin") applied for SSI disability benefits on October 4, 1995 - he was nineteen years old. (Record ("R.") 93-95.) He alleged he was disabled due to a seizure disorder. (See id. at 97, 109, 130.) He was denied benefits on December 11, 1995. His request for reconsideration (see id. at 149) was denied on June 6, 1996. (See id. at 120.) Kevin then requested a hearing before an Administrative Law Judge ("ALJ"). (See id. at 124.) A hearing was held and the ALJ denied Kevin's request for SSI benefits. (See id. at 41-50.) Plaintiff, on behalf of Kevin, appealed the ALJ's decision to the Appeals Council. (See id. at 38, 219-229). A year passed and no action on her appeal was taken, so, on September 17, 1998, Plaintiff sent a letter to the Appeals Council with

additional evidence. (<u>See</u> <u>id.</u> at 233.) On February 4, 1999, Plaintiff's appeal was denied. (<u>See</u> <u>id.</u> at 5-8.)

Plaintiff then filed an action in the Eastern District of New York which resulted in a decision by United States District Judge Allyne R. Ross, issued on March 31, 2000, awarding benefits to Kevin and remanding the case to the Commissioner for a calculation of benefits. (<u>See</u> Exhibit ("Ex.") A, annexed to Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings ("Pl.'s Mem.").) The Commissioner took no action, so, on August 10, 2000, Plaintiff wrote to Judge Ross requesting her assistance. Judge Ross issued an order directing the Commissioner to take prompt action to implement the court's previous order. (<u>See</u> R. 292.)

On September 28, 2000, the SSA informed Kevin in a letter that he was entitled to $24,146.42 in retroactive SSI benefits for the period of September 1995 through September 2000 ("2000 Letter"). (<u>See</u> <u>id.</u> at 295-98.) The first installment, in the amount of $7,188.00, was paid immediately. (<u>See</u> <u>id.</u> at 295, 305.) The letter explained that the amount paid represented twelve times "the maximum monthly payment, including any money the State tells us to pay its residents. . . ." (R. 295.) It went on to explain that "this amount is also the limit for what we can pay in the first and second installment payments." (<u>Id.</u>) A second installment was due in six months, and a third payment would be made if any balance remained. (<u>See</u> <u>id.</u>) Unfortunately, Kevin died on February 26,

3

2001.  (See id. at 304, 305.)  He was almost twenty-five years old.
The Commissioner sent the second installment, but that check was
returned by Plaintiff.  (See id. at 248.)

    The Commissioner then informed Plaintiff that the remaining
$16,958.42 would not be paid to her, and, as a result, Plaintiff
again sought the help of Judge Ross.  (See id. at 305.)  Judge Ross
issued an order seeking an administrative determination from the
Social Security Administration ("SSA") as to whether Plaintiff was
entitled to any of the unpaid retroactive SSI benefits awarded to
Kevin.  (See R. 306-07.)

    In a letter dated April 6, 2001, the Commissioner determined
that Plaintiff was not entitled to Kevin's SSI benefits because he
was not a "child," as defined by the regulations, during the time
the unpaid benefits accrued.   (See id. at 309-10, 312-15.)
Plaintiff disputed the Commissioner's findings in a letter to Judge
Ross, and, in a letter to the Commissioner, requested a
reconsideration of the Commissioner's decision.  (See id. at 315-
20, 321-22.)  Judge Ross denied Plaintiff's request for an award of
the full amount of the $16,958.42 balance, and ordered her to fully
exhaust her administrative remedies with the SSA.  (See id. at 326-
35.)

    On October 1, 2001, the Commissioner reaffirmed his decision
that Kevin was not a "child," and that Plaintiff was not entitled
to the balance of the unpaid SSI benefits.  (See id. at 342-44.)
However, neither Plaintiff nor her attorney received notice of this

decision; the SSA also misplaced Plaintiff's file.  (<u>See</u> <u>id.</u> at 369.)  Nearly two years later, on February 21, 2003, and then again on May 14, 2003, Plaintiff's attorney sought clarification as to the status of her case.  (<u>See</u> <u>id.</u> at 347; <u>see also</u> <u>id.</u> at 354.)

The Commissioner speculates that his office treated those letters as a request to reconsider the SSA's decision of October 1, 2001.  (<u>See</u> Memorandum of Law in Support of the Defendant's Motion for Judgment on the Pleadings ("Def.'s Mem."), at 8.)  In any event, the record reflects that on July 30, 2003, the SSA issued a revised reconsideration determination ("the 2003 Letter"), and found that Kevin met the regulatory definition of a "child" for three of the months during which the unpaid balance accrued, and that Plaintiff was eligible to receive payment for those months. (<u>See</u> <u>id.</u> at 356-64.)

As part of the revised reconsideration decision, the Commissioner asserted a new theory about what the first installment payment of $7,188.00 represented.  The 2003 Letter stated that the first installment of $7,188.00 "represented payment due for the months of Sept. 1995 through July 1997 . . . ." (<u>Id.</u> at 359.)  The effect of treating the first installment as covering the first twenty-three months of benefits potentially recoverable by Plaintiff, was to significantly reduce Plaintiff's recovery.  Under the Commissioner's new theory, since the first installment covered the period through July 1997, Plaintiff could potentially only receive Kevin's benefits for the months of August 1997 through

April 1998 - when Kevin turned twenty-two years old.[1]  (See id. at
360 (2003 Letter  stating:  "The only time period to be examined
for student status is 08/97 to 04/98.").)

Plaintiff challenged the Commissioner's conclusion, and after
a hearing, an ALJ determined that Plaintiff had been paid for the
first twenty-three months, and that between August 1997 and April
1998, Kevin was a student during the months of February 1998 to
April 1998.  (See R. 244-49.)  The ALJ held, therefore, that
Plaintiff should be paid $1740.00, for only those three months.
(See id.)  Plaintiff, seeking the full balance of Kevin's unpaid
benefits, appealed the ALJ's decision, and the Appeals Council
denied Plaintiff's request for review on October 12, 2006.  (See
id. at 236, 38.)  This action was then commenced.

## DISCUSSION

In reviewing the Commissioner's decision, the Court "must
determine whether the correct legal standards were applied and
whether substantial evidence supports the decision."  Butts v.
Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (citing Machadio v.
Apfel, 276 F.3d 103, 108 (2d Cir. 2002)); see also 42 U.S.C. §
405(g) ("The findings of the Commissioner of Social Security as to
any fact, if supported by substantial evidence, shall be
conclusive. . . .")  Substantial evidence is "more than a mere

---

[1] As explained in greater detail below, a parent can only
recover payments owed to a deceased child if the "child" is
either under the age of 18, or is between 18 and 22 years old and
is a student.  20 C.F.R. § 416.1856(a).

scintilla.    It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 59 S. Ct. 206 (1938)). However, "[f]ailure to apply the correct legal standards is grounds for reversal." <u>Pollard v. Halter</u>, 377 F.3d 183, 188-89 (2d Cir. 2004) (quoting <u>Townley v. Heckler</u>, 748 F.2d 109, 112 (2d Cir. 1984)).

Plaintiff argues that because Kevin was in job training programs during the majority of the time that his unpaid benefits accrued, he was a "child" under the regulations, making her eligible to receive the balance of the money owed to him prior to his death.    The SSA regulations provide that SSI benefits of a deceased child, unpaid before the child's death, may be recovered by the child's natural parents if the child was disabled and living with the parents at the time of death.    <u>See</u> 20 C.F.R. § 416.542(b)(2).[2]    The Commissioner does not dispute that Kevin was disabled and living with his mother when he died.    Thus, the only question is whether he was a "child" at the time the unpaid benefits accrued.

For the purposes of Plaintiff's situation, a child is defined

---

[2] This regulation states in part: "If the deceased underpaid recipient was a disabled or blind child when the underpayment occurred, the underpaid amount may be paid to the natural or adoptive parent(s) of the underpaid recipient who lived with the underpaid recipient in the month he or she died or within the 6 months preceding death."

as being "under 22 years old and a student regularly attending school or college or training that is designed to prepare [the child] for a paying job." 20 C.F.R. § 416.1856(a)(2). Plaintiff argues that Kevin was regularly attending job training classes from the beginning of the retroactive payment period – September 1995 – through April 1998. The ALJ found that Kevin was paid for most of those months as part of the initial installment payment, and that he did not meet the definition of "child" for any of the remaining months except for February 1998 to April 1998. (See R. 248.)

Therefore, as a preliminary matter, the Court will first determine whether the 2003 Letter's conclusion, upheld by the ALJ, that the initial payment of $7,188.00 covered the months of September 1995 through July 1997, is legally correct and supported by substantial evidence in the record. That determination will then define and limit the total possible number of months for which Plaintiff can claim Kevin's remaining unpaid accrued benefits.

I.  The First $7,188.00 Payment

The Commissioner points to the 2003 Letter as evidence that Kevin was paid for the months of September 1995 through July 1997. (See R. 359-60.) That letter concluded that "the only time period to be examined for student status is 08/97 to 04/98." (Id.) The letter then determined that Kevin was not a child, except for the last three months, and denied Plaintiff benefits for any other months. (See id.)

8

The ALJ's finding, based on the 2003 Letter, that the initial payment of $7,188.00 covered September 1995 through July 1997, (see id. at 248), was not explained or otherwise supported, and the Commissioner's submissions to this Court also fail to provide any justification for the ALJ's conclusion that the 2003 Letter was correct.

In his opening brief, the Commissioner points to the 2003 Letter, and argues that the payment "reflects application of the first installment to the months of eligibility in the order that the benefits were due." (See Def.'s Mem., at 16.) In response, Plaintiff argues that the original letter, from September of 2000 ("2000 Letter"), relied upon the language of the regulation, and set forth the proper explanation for what the initial payment represented.[3] In reply, the Commissioner argues that the ALJ did not purport to rely on the regulation cited by Plaintiff when he determined that the payment covered specified months. (See Defendant's Reply Memorandum, at 6.) However, notably absent from the Commissioner's reply is an explanation as to what rate, regulation, or logic the Commissioner is purportedly using to support his conclusion. Thus, the Commissioner bases his entire

---

[3] The 2000 Letter states: "When the back SSI payments are at least 12 times the maximum monthly payment, including any money the State tells us to pay its residents, we generally must pay this money in installments. Usually, this amount is also the limit for what we can pay in the first and second installment payments. If a third installment is needed, it will be for the balance of the back payments after we have paid the first and second installments." (R. at 295.)

9

argument upon a conclusory statement, made in the 2003 Letter, which is unsupported by law or evidence, that the initial payment covered specific months, as opposed to the reason given in the 2000 Letter - that it was twelve times the maximum monthly benefit.

The Commissioner's position is illogical.  The total unpaid back payment award of $24,146.42 covered the period from September 1995 to September 2000 - 61 months.  That means that the SSA was paying Kevin an average of $395.84 per month as unpaid back payments.  If the first installment was meant to cover the first twenty-three months of that time period, he would have been paid $9104.32 ($395.84 X 23); however, Kevin was not paid that amount.[4] Thus, there are no mathematical formulas that appear to justify the Commissioner's position that $7,188.00 was paid as the first back-pay installment intended to cover the first twenty-three months of payments that were owed to Kevin.

Furthermore, there is no explanation for why July 1997 was chosen as the cut-off point for the first installment. If the money

---

[4] Alternatively, the regulations could be applied to the Commissioner's numbers.  20 C.F.R. § 416.545(b) states: "the amount of each of the first and second installment payments may not exceed the threshold amount of 12 times the maximum monthly benefit. . . ."  Taking $395.84 as the maximum monthly payment under the Commissioner's formulation, Kevin should have been paid $4750.08 ($395.84 X 12).  Again, that is not the amount he was paid.  Of course, the average of the monthly amount paid to Kevin would not be the maximum monthly benefit amount, which is precisely the problem with the Commissioner's arguments - the Court is left to speculate as to the basis for his mathematical conclusions because no justification and no calculations were actually provided.

due for a sixty-one month period were to be sent in three installments, then the first installment would logically cover the first twenty months, not twenty-three months. The choice of July 1997 as the last month which the first installment purportedly covered, therefore, appears to be an arbitrarily chosen date, not supported by any mathematical calculation or logical explanation tied to the regulations.

The regulations, however, do provide a more reasonable explanation. The regulation concerning installment payments of underpaid benefits requires that "the amount of each of the first and second installment payments may not exceed the threshold amount of 12 times the maximum monthly benefit. . . ." 20 C.F.R. § 416.545(b). The language of the regulation matches the language used in the 2000 Letter. Furthermore, applying the regulation as written is mathematically consistent. If $7,188.00 was the maximum amount that could be paid in the first installment, and following the explanation given in the 2000 Letter, that amount yields a maximum monthly benefit of $599.00 ($599 X 12 equals $7,188). This number corresponds to the number that Plaintiff argues was the maximum monthly benefit rate, including state subsidies in New York, for the year 2000 - the year in which the installment payment was made.[5] Thus, the record supports Plaintiff's contention that

_____

[5] Plaintiff does not cite to any source confirming this number; however, the Commissioner does not seem to dispute this number. (See Pl.'s Mem., at 18.)

the 2000 Letter, and not the 2003 Letter, correctly reflects what the $7,188.00 installment covered - the maximum payment of a first installment allowed by the regulations - and not a payment covering a specific set of randomly chosen months.[6]

For the reasons stated above, the Court concludes that the ALJ's decision to exclude September 1995 to July 1997 from consideration of whether Kevin was a "child" throughout the relevant time period - from September 1995 through April 1998 - is not supported by substantial evidence in the record.

## II. Was Kevin a "Child"?

The next issue, in this second round of litigation, is whether Kevin was a "child" throughout the relevant time period, such that Plaintiff is entitled to receive the balance of his unpaid back-payments. As already stated, to qualify as a "child," Kevin must have been "under 22 years old and [considered] a student regularly attending school or college or training that is designed to prepare [him] for a paying job." 20 C.F.R. § 416.1856(a)(2). To qualify as a student attending training, a child must meet the standards set forth in 20 C.F.R. § 416.1861. Those standards require a child to be in a course of training to prepare the child for a paying

---

[6] It should be noted that the multiplier "12" in the regulation is not "twelve months;" rather 12 is simply a numerical multiplier for the maximum monthly benefit amount. Thus, nothing in the regulation ties an installment payment to a period of months; rather, the maximum monthly benefit amount is used as a base number from which calculations are made. See 20 C.F.R. § 416.545(b).

job, for at least fifteen hours per week. See 20 C.F.R. §
416.1861(a)(3). Less time may be spent in training if it is for
reasons beyond the control of the child. See 20 C.F.R. §
416.1861(a)(4). Additionally, subsection (c)(1) allows children to
still be considered students if they "have to stay home because of
[their] disability" and they are studying at home, and a home
visitor or tutor directs the training. See 20 C.F.R. §
416.1861(c)(1)-(3). Thus, if Plaintiff can provide documentation
that Kevin attended job training courses, even for less than
fifteen hours a week because of his disability, he could still be
considered a student.

20 C.F.R. § 416.1861(g) describes the kinds of documentation
that the SSA will accept as proof of student status. The SSA
requires a paper showing the person is in a training program, plus
an explanation of that program including a description of: (i)
courses taken; (ii) how many hours per week are spent in classes;
(iii) the name and address of the training agency; and (iv) the
name and telephone number of a contact person at the agency. See
20 C.F.R. § 416.1861(g)(i)-(iv). Therefore, documentation meeting
these standards would be sufficient evidence showing that Kevin was
a student during the relevant time period, and, if such
documentation is provided, Plaintiff would be entitled to payment
for those months.

Plaintiff asserts that, starting in December of 1995, Kevin
was enrolled in a series of programs by New York State's Department

13

of Vocational and Educational Services ("VESID"), and that she
provided the SSA sufficient documentation to prove that he was in
training from that time until April of 1998. First, Plaintiff
points to a February 12, 1996 letter from United Cerebral Palsy of
Queens (see R. 24-26), and a follow-up evaluation done in March of
1996 (see R. 204-06), showing Kevin was evaluated and placed at a
job site, but, as a result of his seizures, he was referred back to
VESID. (See id. at 17.) Next, Plaintiff points to a one-week "Work
Samples" evaluation done by Fedcap Rehabilitation Services, in
April of 1996.  (See id. at 370-72.)  Kevin was terminated from
that program in May.  (See id.)  From June of 1996 until the end of
August 1996, Kevin participated in a Supported Employment Program
at Goodwill Industries, where he worked at two jobs, one at
McDonald's, and the other at Old Navy.  (See id. at 187.)  He was
unable to "cope with the pressure on the jobs" and was terminated.
(See id.)  Thus, Plaintiff has provided documentation that Kevin
was a student for seven months in 1996 - from February until the
end of August.[7]  Plaintiff also explains that during this time
Kevin's seizures increased, and he was eventually required to stay
at home until his condition stabilized.  (See id. at 29.)

The next period of documented job training is from February
1998 until October of 1998, when it was finally determined that

---

[7] The Commissioner concedes that Kevin presented
documentation showing he was a student for a period of time in
1996.  (See Def.'s Mem., at 17.)

Kevin could not be employed. (See id. at 212.) However, only the first three months of this time period - February 1998 to April 1998 - could count towards payments Plaintiff might be entitled to, because Kevin turned twenty-two in April of 1998. Relying on the documentation provided by Plaintiff, the ALJ determined that Kevin was a student for this time period and held that Plaintiff should be paid $1740.00 for those months. (See id. at 248.) The Commissioner represents that this money has already been paid. (See Def.'s Mem., at 18.) The documentation relied upon by the SSA in awarding Plaintiff payments for these three months is substantially similar to the documentation provided by Plaintiff for the months between February 1996 to August 1996.

During the undocumented interim period - from October 1996 until February of 1998 - Plaintiff argues that Kevin had to stay at home because of his disability, and pursuant to 20 C.F.R. § 416.1861(c)(1), he should still qualify as a student. However, Plaintiff has not pointed to any evidence in the record indicating that Kevin was also studying at home, and that a home visitor or tutor directed his training, as the regulation also requires. See 20 C.F.R. § 416.1861(c)(2)-(3). Rather, it appears that Kevin's disability prevented him from being further referred by VESID to any other job training programs, and, therefore, he was not enrolled in a training program which would qualify him as a

student.[8]  Without evidence that Kevin was a student, he cannot be considered to have been a "child."  See 20 C.F.R. § 416.1861(f) ("We need evidence that you are a student if you are 18 years old or older but under age 22, because we will not consider you to be a child unless we consider you to be a student.").

Therefore, the evidence in the record indicates that Kevin qualified as a "child" for seven months in 1996 - from February through the end of August.  The SSA has already determined that the evidence presented for these months supports the conclusion that Kevin was a student.[9]  (See R. 361.) The Court therefore concludes that, based on the record and the Commissioner's prior determination that Plaintiff would have qualified for payment for those months, Plaintiff should be paid for those months.

However, from October 1996 to February 1998, there is no

_____

[8]  Plaintiff argues that Kevin was a student under 20 C.F.R. § 416.1861(d)(2)(i), which permits a child to still be considered a student if a counselor or teacher believes the child needs to stay out of class for "a short time during [a] course or between courses" to enable the student to continue training, provided he is in "a course designed to prepare disabled people for work." 20 C.F.R. § 416.1861(d)(2)(i) (emphasis added).  However, the record does not contain documentation that Kevin was enrolled in "a course designed to prepare disabled people for work," from October 1996 until February of 1998.  Therefore, under this regulation as well, the record is insufficient to show that Kevin was a "student" during this undocumented interim period.

[9]  The 2003 Letter found that the proof submitted by Plaintiff would qualify as proof of student status during these months, but denied payment because it considered those periods covered by the initial payment.  (See R. 360-61.)  Therefore, the Commissioner has already determined that these seven months are properly documented.

documentation meeting the requirements of 20 C.F.R. §
416.1861(g)(i)-(iv). Thus, there is no evidence that Kevin was a
student during that time. Therefore, the record supports the ALJ's
determination that Plaintiff is not entitled to payments for those
months. Nonetheless, Plaintiff argues that she is still entitled
to payment for those months as a matter of equity.

III.  Equity

Plaintiff's final argument is that this Court should exercise
its equitable powers to grant her the entire balance of the
remaining retroactive disability payments awarded to Kevin. In
support, Plaintiff relies on two cases and the twelve-year history
in which the SSA has thwarted Plaintiff and her son's attempts to
access disability funds they were eligible to receive. While the
sad history of this case is compelling, the Court can find no basis
for requiring the SSA to pay money which Plaintiff is not legally
entitled to receive.

Plaintiff argues that had Kevin lived, he would have been paid
all of the retroactive disability payments, but, because the SSA
delayed payment, he died before he received the money. Thus,
Plaintiff argues that she was prejudiced by the SSA's delay, and
therefore, this Court should remedy that prejudice by awarding her
payment.

In support of her argument, Plaintiff first cites to Davilla
v. Shalala, 848 F. Supp. 1141, 1144 (S.D.N.Y. 1994). That case
held: "The court may provide a remedy for the consequences of

17

administrative delay if excessive and prejudicial to a private party." 848 F. Supp. at 1144. However, the remedy authorized in Davilla was the payment of interim benefits, which could be recouped if the record was found to support a determination that there was no right to benefits under the regulations. See id.

Here, Plaintiff cannot claim prejudice simply based on the fact that she is entitled to less than the full amount Kevin would have been paid had he lived, because that is merely the effect of regulations written to determine what money will be paid to a parent when a child beneficiary passes away. Her claim to Kevin's unpaid benefits was limited to less than the full amount owed to Kevin the moment Kevin passed away in 2001. Thus, it is the regulations that limit her claim, not the subsequent delay caused by the SSA's rejection of her claims.

Plaintiff's reliance on Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981), is equally unavailing. That case addressed the equitable authority by which a district court can remand a case back to an administrative tribunal and set appropriate time limits within which that tribunal must act. Zambrana, 651 F.2d at 844. Thus, the equitable authority exercised in Zambrana was not an equitable power to order unauthorized payment of unpaid benefits, but rather authority over the speed at which the administrative body was required to address the application for benefits.

Here, Plaintiff is asking the Court to set aside the Commissioner's determination, which is supported by the record and

the regulations, that Plaintiff is not entitled to the full amount of the balance that was owed to Kevin.  In light of the history of this case, Plaintiff's request is understandable.  Judge Ross ordered payment of Kevin's disability benefits nearly eight years ago.  However, Judge Ross also noted that if a legal remedy is available, then an equitable remedy is not available.  (See R. 334-35.)  This Court agrees, and, because an award of the full amount of the balance of the unpaid benefits would amount to a payment to which Plaintiff is not entitled, the Court cannot exercise equitable authority in the manner in which Plaintiff is requesting.

IV.  Remand

The Court has concluded that, according to the SSA's regulations, and the Commissioner's own findings, Plaintiff is entitled to an additional seven months worth of unpaid benefits. It cannot, however, calculate the value of those months based on the current record.  Therefore, the Court recommends that this case be remanded back to the Commissioner to calculate the amount of unpaid disability payments which Plaintiff is owed for seven months - February, March, April, May, June, July, and August of 1996.  See 42 U.S.C. 405(g); see also Curry v. Apfel 209 F.3d 117, 124 (2d Cir. 2000) (holding that a remand for a calculation of benefits is appropriate when "no purpose would be served by remanding the case for rehearing") (quoting Balsamo v. Chater, 142 F.3d 75, 82 (2d Cir. 1998) and citing Carroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 644 (2d Cir. 1983)).

In light of the poor track-record of the Commissioner in awarding Kevin and his mother benefits that were due, the Court also recommends that the Commissioner be ordered to make a final determination as to the amount owed to Plaintiff for the seven months, and to pay such amount, within sixty-days of the Court's order becoming final. See Butts, 388 F.3d at 387 (ordering the district court to direct that further proceedings by the agency be completed within sixty days of the issuance of the district court's order); see also Zambrana, 651 F.2d at 844 (setting time-limits within which the SSA must act).

## CONCLUSION

For the reasons stated above, the Court respectfully recommends that Plaintiff's motion for judgment on the pleadings be granted in part and denied in part, that the Commissioner's motion be denied, and that the ALJ's decision be reversed to the extent that it denies Plaintiff unpaid disability payments for seven months in 1996. The Court further recommends that the action be remanded solely for calculation and payment of benefits for those seven months, to be completed within sixty days of the Court's order becoming final.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (d). Such objections shall be filed

remanded solely for calculation and payment of benefits for those seven months, to be completed within sixty days of the Court's order becoming final.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6(a) and (d). Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard M. Berman, United States District Judge, and to the chambers of the undersigned, Room 1660. Any requests for an extension of time for filing objections must be directed to Judge Berman. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 145, 106 S. Ct. 466, 470 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

Respectfully submitted,

THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated:    May 7, 2008
          New York, New York

21